IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PHILLIP C.,[1]

               Plaintiff,                                **Case No. 6:25-cv-00042-AP**

       v.                                        **OPINION AND ORDER**

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

---

**POTTER, United States Magistrate Judge**:

Plaintiff Phillip C. brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff alleges that the Administrative Law Judge (ALJ) erred by (1) failing to properly consider whether Plaintiff's headaches are equivalent to listing 11.02 at step three; (2) failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony; and (3) finding unpersuasive the medical opinion of Mark Vanderburgh, MD. Pl.'s Br., ECF No. 9. For the reasons outlined below, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on November 5, 2018, alleging disability since November 2, 2018. Tr. 171. The claim was denied initially and upon reconsideration. Tr. 93, 100. Plaintiff requested a hearing before an ALJ and appeared via phone before the Honorable Richard Geib on December 17, 2020. Tr. 27–60. In a written decision dated February 10, 2021, ALJ Geib determined that Plaintiff was not disabled under the Social Security Act. Tr. 13–22. Plaintiff sought review from the Appeals Council; the Appeals Council declined. Tr. 1. Plaintiff then sought judicial review in the District Court. Tr. 511–12.

Upon review, Judge Armistead found that the ALJ had erred in considering Plaintiff's subjective symptom testimony regarding his headaches. Tr. 516–18. He also found the ALJ had erred in finding unpersuasive the medical opinion of Plaintiff's primary care provider, Dr. Vanderburgh. Tr. 521–22. Finally, Judge Armistead found that the ALJ had erred in failing to consider whether Plaintiff's headache disorder was equivalent to listing 11.02. Tr. 522–24. The District Court ordered remand for further proceedings on April 12, 2023. Tr. 528.

A supplemental hearing was held on August 12, 2024, again before ALJ Geib. Tr. 462–78. On September 11, 2024, ALJ Geib issued a written decision finding that Plaintiff was disabled beginning on December 13, 2021, but that he was not disabled prior to that date. Tr. 435–51. Plaintiff now seeks judicial review of that decision.

Plaintiff was 51 years old on his alleged onset of disability date. *See* Tr. 61. When Plaintiff first filed his application, he alleged disability due to seizures, arthritis in hands, memory loss, and right leg pain. Tr. 62. On June 14, 2019, Plaintiff updated his application to indicate that as of May 30, 2019, he had been "waking up with really bad headaches that last

most of the morning." Tr. 231. Plaintiff has a high school diploma and no relevant prior work experience. Tr. 35, 450.

## STANDARD OF REVIEW

When reviewing the decision of the ALJ, district courts view questions of law de novo. *Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025). But when there is no legal error, the denial of benefits will only be overturned if the ALJ's decision "is not supported by substantial evidence." *Id.* (internal quotation and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). This is not a high bar; substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court may not substitute its judgment for that of the ALJ when the evidence could support either affirming or reversing the ALJ's decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

## DISCUSSION

A person is disabled when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining if someone seeking benefits is disabled, the ALJ applies a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). If at any point in the five-step process the ALJ determines that the person is or is

3 – OPINION AND ORDER

not disabled, the process stops. *Id*.; *see also Woods v. Kijakazi,* 32 F.4th 785, 787 n.1 (9th Cir. 2022).

The first step looks at whether the claimant is doing "substantial gainful [work] activity;" if they are, they are not disabled. 20 C.F.R. § 404.1520(a)(4)(i). The second step focuses on the claimant's physical or medical impairment; a claimant is not disabled unless they can show a severe impairment that lasts at least a year or is expected to result in death. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ asks whether the severity of the impairment meets or equals one of the impairments listed by the Commissioner of Social Security. *Id.* § 404.1520(a)(4)(iii). If the impairment is equivalent to one of the listed impairments, the claimant is presumptively disabled. *Id.* If not, the ALJ proceeds to the fourth step. *Id.* § 404.1520(a)(4)(iv).

Prior to proceeding to steps four and five, the ALJ must determine the residual function capacity. *Id.* § 404.1520(e). This analysis determines what a claimant can do on a sustained basis despite their limitations. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). Then, the fourth step requires an analysis of the claimant's part work and residual functioning; if the claimant can still do their past relevant work, they are not disabled. *Id.* § 404.1520(a)(4)(iv). At the fifth step, the question is whether given the claimant's present abilities, there is another type of job they can do; if the claimant can do another job, they are not disabled. *Id.* § 404.1520(a)(4)(v).

Here, the ALJ determined that Plaintiff satisfied the first two steps of the analysis. Tr. 437–38. At step three, though, the ALJ determined that his impairment did not meet or equal one of the impairments listed by the Commissioner. Tr. 439–41. The ALJ then conducted the RFC assessment and determined that Plaintiff could perform light work with certain limits including

never climbing ladders, ropes, and scaffolds and avoiding "even moderate exposure to work hazards" and "concentrated exposure to extreme cold and heat, and vibration." Tr. 441. Plaintiff has no relevant past work, but the ALJ determined, with the aid of testimony from the vocational expert, that Plaintiff could perform work as a router (22,358 jobs in the national economy), a routing clerk (122,877 jobs in the national economy), and a marker (165,324 jobs in the national economy).

Plaintiff takes issue with the ALJ's determination that he did not meet listing 11.02 at step three of the test and how the ALJ analyzed his own subjective testimony and the testimony of his providers when making the RFC assessment.

## I.    Plaintiff's Headaches and Listing 11.02

Plaintiff argues that the ALJ failed to properly consider whether Plaintiff's headaches medically equaled listing 11.02. Pl.'s Br. 9.

After the ALJ's initial decision, the District Court found that the ALJ had erred at step three when he "only considered whether plaintiff's neurocognitive disorder met listing 11.02, and failed to also consider whether hid headache disorder was equivalent to listing 11.02." Tr. 524. On remand, the ALJ was ordered to "consider whether plaintiff's headaches are equivalent to listing 11.02 at step three." Tr. 527.

On remand, at step three, the ALJ purported to consider whether Plaintiff's headaches medically equaled listing 11.02. The ALJ concluded: "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and such evidence may support a finding that the listing is medically equaled. Here, there is no evidence that the claimant has

5 – OPINION AND ORDER

suffered dyscognitive seizures. Accordingly, the evidence does not justify finding that 11.02 is medically equaled." Tr. 439.

The ALJ's reliance on the fact that Plaintiff does not suffer dyscognitive seizures demonstrates that the ALJ did not properly consider whether the symptoms Plaintiff experiences from his headaches *equal* listing 11.02.

SSR 19-4P details how to evaluate primary headache disorder under the listing of impairments, noting that epilepsy, 11.02, "is the most closely analogous listed impairment." *Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P (S.S.A. Aug. 26, 2019).

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

6 – OPINION AND ORDER

*Id.* In evaluating whether the headaches medically equal the listing, the ALJ need not find that Plaintiff had dyscognitive seizures. Instead, the ALJ must evaluate whether Plaintiff's symptoms are "equal in severity and duration to the criteria," i.e. to dyscognitive seizures, by considering the above-listed factors. Because the ALJ failed to consider any of those factors, the ALJ erred at step three.

## II.      Plaintiff's Subjective Symptom Testimony

Plaintiff also argues that the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, especially regarding his headaches. Pl.'s Br. 2–6.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If this first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ then must determine the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "[T]he ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (emphasis added) (internal quotation and citation omitted). Specific, clear and convincing reasons are those which "identify what testimony is not credible and what evidence undermines the claimant's complaints."

7 – OPINION AND ORDER

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

At the initial hearing in 2020, Plaintiff testified that he experienced headaches every day or every other day. Tr. 34. He testified that generally the headaches were between a two to five on a ten-point pain scale, but sometimes they would get up to a nine or ten. Tr. 34. He testified that when he has a headache, he tries not to read too much and not to be on his phone or tablet. Tr. 35. He will occasionally try to watch a movie, but more often would turn it off and just listen to music. Tr. 39. He will "just basically sleep." Tr. 35. He testified that he does have some difficulty doing things around the house but will generally endure the pain because he has to eat. Tr. 39. Plaintiff testified that he had worked with his doctor and tried three or four different medications, but that none of them had worked to control his headaches. Tr. 36. He testified that his doctor had wanted to refer him to a specialist. Tr. 36. Judge Armistead concluded that the ALJ erred in considering that testimony and ordered remand. Tr. 516-18.

On remand, in 2024, a second hearing was held. Plaintiff testified that his headaches had gotten worse since the previous hearing. "I am waking up with a headache and going to sleep with a headache." Tr. 474. Plaintiff also attempted to provide additional testimony about what was happening in 2018 and 2019, but the ALJ declined to allow him to offer additional testimony. Tr. 472 ("I'm not going to let him testify about 2018 and 2019.").

After considering the testimony, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported." Tr. 443. Although the ALJ acknowledged that Plaintiff "has consistently reported having chronic headaches," the ALJ found that "the medical evidence does not support that his headaches were

as severe as alleged." Tr. 444. The ALJ reasoned that Plaintiff's headaches "were not always chronic or severe," that Plaintiff "may have been referred to a headache specialist, but failed to attend," and that "there is no evidence that [Plaintiff] pursued other treatments for headaches . . . such as Botox injections, occipital nerve stimulation, or biofeedback therapy." Tr. 444.

In finding that Plaintiff's headaches "were not always chronic or severe," the ALJ relied on provider notes from June 2019 when Plaintiff first complained of headaches, stating that he had been having them on and off for the past three months and that they were increasing in intensity. Tr. 444 (citing Tr. 298). The record indicates that Plaintiff's recurring headaches started in the first half of 2019. When Plaintiff saw his provider in March 2019, there was no mention of headaches, but by June 2019 he was reporting to his medical providers that he had been having recurring headaches for the past three months. *Compare* Tr. 301 *with* Tr. 298. Also in June 2019, Plaintiff updated his application to indicate that as of May 30, 2019, he had been "waking up with really bad headaches that last most of the morning." Tr. 231. From then on, Plaintiff consistently reported chronic headaches to his medical providers. *See* Tr. 296–97, 347–48, 396, 399, 401, 967. The ALJ's finding that Plaintiff's headaches "were not always chronic" ignores the entire medical record after June 2019 and is not supported by substantial evidence.

With respect to the finding that Plaintiff may have declined to see a specialist, the ALJ himself acknowledges that "the medical evidence regarding [a referral to a headache specialist] and failure to appear is unclear" but still relies on that to discount Plaintiff's testimony. Tr. 444. The Court finds that this is not a clear and convincing reason.

Finally, the ALJ seemed to imply that Plaintiff had only sought conservative treatment because he had not pursued any other treatments other than prescription medications for his

9 – OPINION AND ORDER

headaches. Tr. 444. Plaintiff saw his medical providers regarding his headaches in June 2019, September 2019, January 2020, March 2020, and June 2020. Tr. 296–97, 347–48, 396, 399, 401. At each appointment, Plaintiff was prescribed a new medication because the previous medication had not helped alleviate his headache symptoms. *Id.* The frequency of appointments combined with the repeated trials of prescription medication indicates that Plaintiff was aggressively seeking treatment for his headaches. As Judge Armistead previously found, "A regimen of prescription medications is not fairly characterized as 'conservative' treatment." Tr. 517 (citing *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017)). This is also not a clear and convincing reason to discount Plaintiff's testimony.

### III.    Medical Opinions of Dr. Mark Vanderburgh

Plaintiff argues that the ALJ also erred by finding unpersuasive the opinion of treating provider, Dr. Vanderburgh. Pl.'s Br. 6–9.

When evaluating medical evidence, the ALJ must look at the persuasiveness of the medical opinion with a focus on the "'supportability' and 'consistency'" of the findings. *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Id.* at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. Vanderburgh had been Plaintiff's primary care provider since 2016. Tr. 424. In a December 2020 opinion, Dr. Vanderburgh noted that Plaintiff's medical conditions include a traumatic brain injury at age 13, seizure disorder, chronic daily headaches, ulnar neuropathy, and

10 – OPINION AND ORDER

low back pain. Tr. 424. He opined that Plaintiff could lift or carry less than ten pounds. Tr. 425.

He opined that Plaintiff could stand or walk for about 10 to 15 minutes at a time, but noted that

that varied according to the time of day. Tr. 425. He opined that Plaintiff could stand or walk less

than two hours total in a standard eight-hour workday and that Plaintiff could not sit still as his

headaches mean he needs to move around. Tr. 425. He opined that the remainder of a workday

would need to be spent lying down or sleeping. Tr. 425. He noted that Plaintiff's headaches are

the main symptom that causes these limitations. Tr. 425. He noted that Plaintiff's headaches

often present with nausea and affect Plaintiff's ability to concentrate and make decisions. Tr.

427. He noted that Plaintiff has been prescribed Dilantin, Keppra, floricet, amitriptyline, and

Depakote. Tr. 427. He opined that due to Plaintiff's headaches, Plaintiff would be off-task 90%

of a standard eight-hour workday and would need to miss more than 16 hours, or two full work

days, per month due to his symptoms. Tr. 427.

The ALJ found Dr. Vanderburgh's opinion to be unpersuasive. Tr. 448. Regarding the

supportability and consistency of Dr. Vanderburgh's opinion, the ALJ found that Dr.

Vanderburgh's explanations were "extremely brief and not convincing" and that his findings

overstated Plaintiff's limitations because they were "inconsistent with the medical evidence and

other evidence." Tr. 448.

The ALJ's analysis here was similar to that of Plaintiff's subjective symptom testimony.

The ALJ acknowledged that medication did not help Plaintiff's headaches, but noted that

Plaintiff's headaches were not always chronic or severe because in June 2019, Plaintiff reported

that he was having headaches on and off for three months. Tr. 448. The ALJ again relied on

Plaintiff's testimony that his doctor wanted to refer him to a specialist to conclude that Plaintiff

11 – OPINION AND ORDER

"may have been referred to a headache specialist, but failed to attend." Tr. 448. Finally, the ALJ concluded that because Plaintiff had not pursued other treatments such as Botox injections, occipital nerve stimulation, or biofeedback therapy, "his headaches were not so severe." Tr. 448.

For the same reasons as discussed above, the ALJ's analysis here is faulty and not supported by substantial evidence. Plaintiff's headaches appear to have begun around March or April in 2019. They increased in severity and intensity until Plaintiff was experiencing chronic daily headaches by September 2019. Plaintiff repeatedly saw Dr. Vanderburgh every three to four months to follow-up on his chronic headaches. At each appointment, Plaintiff attempted a new medication to treat the headaches. This is in no way indicative of conservative treatment. Although Plaintiff's own testimony indicates that Dr. Vanderburgh wanted to refer him to a specialist, there is no indication that a referral was made, much less that Plaintiff failed to attend an appointment with a specialist. The ALJ's finding that Dr. Vanderburgh's opinion is inconsistent with the medical evidence is not supported by substantial evidence.

## IV.    Remedy

Because the ALJ erred, the question is whether to remand for benefits or for further proceedings. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Defendant argues that "there are many reasons that cast doubt as to whether Plaintiff was disabled." Def.'s Br. 11, ECF No. 14. Defendant cites to the "numerous unchallenged prior administrative medical findings that comport with the ALJ's findings and decision," Plaintiff's activities of daily living, and Plaintiff's testimony "showing his disinterest in pursuing or following up on a referral for further headache treatment." *Id.* Here, Defendant simply regurgitates the previous arguments that this Court has already rejected.

Applying *Garrison*, the Court finds that Plaintiff is disabled as of June 24, 2019. Defendant has not identified any legitimate gaps or ambiguities in the evidence that would require further development of the record. "Allowing the ALJ to have [another] mulligan" is not a "useful purpose." *Garrison*, 759 F.3d at 1021. If Plaintiff's subjective symptom testimony or Dr. Vanderburgh's medical opinion were credited as true, the ALJ would be required to find Plaintiff disabled. Plaintiff testified that he has daily headaches, during which he can do little else but lay on the couch and sleep or listen to music. Tr. 34-35. Similarly, Dr. Vanderburgh opined that Plaintiff is likely to miss at least the equivalent of two full days of work a month. Tr. 427. The vocational expert testified that an employee who missed two or more days of work a month would be unable to maintain employment. Tr. 56-57. Based on vocational expert testimony, Plaintiff would be unable to maintain employment.

It is undisputed that Plaintiff is disabled as of December 13, 2021, so the time period at issue is between Plaintiff's alleged onset date of November 2, 2018, and his 55th birthday on December 13, 2021. The record reflects that Plaintiff's headaches did not begin until early 2019. The Court finds that Plaintiff was disabled as of June 24, 2019, when Plaintiff saw his medical providers regarding his daily headaches and was first prescribed medication for them.

As the Ninth Circuit has emphasized, the credit-as-true analysis "is designed to achieve fairness and efficiency." *Id.* at 1019. "Delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage—financial, medical, and emotional. Such damage can never be remedied." *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

This is a rare instance where remand for an award of benefits is appropriate. Plaintiff satisfies all three requirements under *Garrison*. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. This case has already been remanded once and the Court sees no purpose for further proceedings.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this __27th__ day of March, 2026.

       __/s/Amy E. Potter_____
       Amy E. Potter
       United States Magistrate Judge

14 – OPINION AND ORDER